1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                                DISTRICT OF NEVADA

8                                        * * *

| | |
|---|---|
| 9  BRANCH BANKING AND TRUST<br>10  COMPANY, a North Carolina banking<br>    corporation, | Case No. 2:15-cv-00574-MMD-PAL |
|                          Plaintiff,<br>11          v. | ORDER |
| 12  WESTAR PROPERTIES, a Nevada<br>    corporation; JAMES D. HAMMER, an<br>13  individual; JAMES MESERVEY, an<br>    individual; JAMES AND JOANNE<br>14  HAMMER, Trustees of the HAMMER<br>    FAMILY TRUST dated March 13, 2000;<br>15  JAMES AND ROZANNE MESERVEY,<br>    Trustees of the MESERVEY FAMILY<br>16  TRUST dated December 16, 1994; and<br>    DOES 1 through 10, inclusive,<br>17<br>                         Defendants.<br>18 | (Plaintiff's Motion for Summary Judgment –<br>ECF No. 26;<br>Counter-claimant's Motion for Partial<br>Summary Judgment – ECF No. 29) |
| 19  WESTAR PROPERTIES, a Nevada<br>    corporation; JAMES D. HAMMER, an<br>20  individual; JAMES MESERVEY, an<br>    individual; JAMES AND JOANNE<br>21  HAMMER, Trustees of the HAMMER<br>    FAMILY TRUST dated March 13, 2000;<br>22  JAMES AND ROZANNE MESERVEY,<br>    Trustees of the MESERVEY FAMILY<br>23  TRUST dated December 16, 1994; and<br>    DOES 1 through 10, inclusive,<br>24<br>                  Counter-claimant,<br>25          v.<br>26  BRANCH BANKING AND TRUST<br>    COMPANY, a North Carolina banking<br>27  corporation,<br>28<br>                  Counter-defendant. | |

**I.      INTRODUCTION**

This case stems from the relationship between a lender, a borrower, the Federal Deposit Insurance Corporation ("FDIC"), and an assuming bank. Before the Court are cross motions for summary judgment from Plaintiff/Counter-defendant Branch Banking & Trust Company ("BB&T") (ECF No. 26) and Defendants/Counter-claimants (ECF No. 29). The Court has also reviewed each sides' respective responses (ECF Nos. 30, 33) and replies (ECF Nos. 32, 34). Several months after the cross motions were fully briefed, Defendants filed a supplement (without seeking leave of court pursuant to LR 7-2(g)) based on a change in the material facts underlying their Partial Motion for Summary Judgment — namely a change in the relationship between BB&T and the FDIC. (ECF No. 35.) BB&T filed a response to the supplement. (ECF No. 40.)

For the reasons discussed below, BB&T's Motion is granted in part and denied in part, and Defendants' Motion is denied.

**II.     BACKGROUND**

In 2000, Colonial Bank lent Westar $250,000 in exchange for a promissory note ("the Westar Loan"). (ECF No. 26-3 at 13-15.) The Westar Loan was also secured by guaranties from Hammer, Merservey, The James D Hammer Revocable Trust Dated March, 8 1995, and the Merservey Family Trust Dated December 16, 1994. (*Id.* at 17 to 34.) The parties extended the note's maturity and increased the line of credit over the next few years, until a final agreement was reached on August 8, 2008, setting a maturity date of August 21, 2009, and a principal balance of $500,000 ("the Amended Note"). (*Id.* at 41-43.) On August 11, 2009, ten days before the loan was to mature, Colonial Bank sent Westar a notice listing the maturity date, principal due ($500,000.29), and interest due ($3,450.06). (*Id.* at 72.) When the loan became due, Westar did not pay.

On August 14, 2009, Colonial Bank folded and appointed the FDIC as receiver. The FDIC and BB&T entered into a purchase-and-assumption agreement wherein BB&T assumed a significant portion of Colonial Bank's assets — including the Amended Note and other related debts. (ECF No. 26-2 at 2-3.) The purchase-and-assumption agreement

included a provision for sharing losses, which meant that the FDIC would compensate BB&T for up to 80% of the losses on Colonial Bank's assets. (*Id.* at 33.)

In 2010 and 2011, Hammer and his business partner, James Meservey, approached BB&T several times about settling a number of their debts. They often dealt with Rich Yach ("Yach"), who was a problem loan administrator at BB&T. (ECF No. 30 at 36.) Yach, who had previously worked for Colonial Bank, introduced himself to Hammer and Merservey as a BB&T representative who was authorized to discuss their various loans. (*Id.*) Hammer and Merservey proposed different plans for dealing with their debts, including resolving all of Hammer's Colonial Bank loans as part of one global resolution. (*Id.*) According to Hammer, sometime in June 2012 he and Meservey met with Yach. At that meeting Yach told Hammer and Merservey that he had not gotten a defeasance they had requested, "but the good news is that I did get the unsecured loans written off." (*Id.* at 37) Hammer understood Yach's statements to mean that BB&T had released them from the debt associated with the Hammer Loan. Yach denies that he made any remarks indicating that Hammer was no longer responsible for the debt. (ECF No. 26 at 9.) Yach also maintains that a decision to relieve the debt would have required the approval of multiple BB&T employees and a written change to the Amended Note. (*Id.* at 10.) Hammer alleges that Yach's statements affected his decision about how to resolve other loans with BB&T. (ECF No. 18 at 4.)

On March 27, 2015, BB&T filed the Complaint against the Defendants in this action, alleging causes of action for breach of contract and breach of the covenant of good faith and fair dealing. (ECF No. 1.) Defendants answered and asserted counterclaims including (1) breach of the express and implied terms of the Amended Note, (2) intentional and/or negligent misrepresentation, and (3) promissory estoppel. (ECF No. 18.)

On September 14, 2016, BB&T and the FDIC agreed to terminate the shared-loss program. BB&T paid the FDIC $230,288,961 for the remaining assets. (ECF No. 35-1 at 21-28.)

///

1    BB&T moves for summary judgment on several issues. First, BB&T asks the Court

2    to determine, as a matter of law, that it has established Defendants' liability for breach of

3    the Amended Note. Next, BB&T seeks summary judgment for each of Defendants'

4    counterclaims, and lastly for a determination that the amount owed to BB&T totals

5    $665,169.52 plus interest accrued since February 29, 2016. (ECF No. 26 at 3.)

6    Defendants cross move for summary judgment on a single issue. They argue that

7    equity demands that any judgment against them must be limited by the amount the FDIC

8    paid BB&T for the Westar Loan as part of the final agreement. (ECF No. 29 at 2-3.)

9    **III.    LEGAL STANDARD**

10    "The purpose of summary judgment is to avoid unnecessary trials when there is no

11    dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

12    F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when "the pleadings,

13    depositions, answers to interrogatories, and admissions on file, together with the affidavits,

14    if any, show there is no genuine issue as to any material fact and that the movant is entitled

15    to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986)

16    (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if there is a sufficient evidentiary basis

17    on which a reasonable fact-finder could find for the nonmoving party and a dispute is

18    "material" if it could affect the outcome of the suit under the governing law. *Anderson v.*

19    *Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ

20    on the material facts at issue, however, summary judgment is not appropriate. *Warren v.*

21    *City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). In evaluating a summary judgment

22    motion, a court views all facts and draws all inferences in the light most favorable to the

23    nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103

24    (9th Cir. 1986).

25    The moving party bears the burden of informing the court of the basis for its motion,

26    together with evidence demonstrating the absence of any genuine issue of material fact.

27    *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the

28    burden shifts to the party resisting the motion to "set forth specific facts showing that there

4

is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

### A.    Plaintiff's Motion for Summary Judgment

BB&T asks the Court to grant summary judgment (1) on Defendants' liability for BB&T's claim for breach of the Amended Note, (2) against Defendants' counterclaims, and (3) on BB&T's entitlement to $665,169.52 plus interest accrued since February 29, 2016. In evaluating BB&T's Motion, the Court resolves questions of fact in favor of Defendants. Specifically, the Court considers BB&T's Motion under the assumption that Yach represented to Hammer and Mersevey that the Westar loan had been "written off" and that representation affected Defendants' decisions about their remaining debts with BB&T. BB&T's main arguments are, first, even accepting Defendants' allegations as true, it was unreasonable for them to rely on an oral waiver of liability when so much money was at stake and the Amended Note expressly required a waiver to be in writing and, second, many of the counterclaims fail because the only damages on which they are based are attorneys' fees.

### 1.    Defendants' Liability for Breach of the Amended Note

A plaintiff in a breach of contract action must show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach. *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008). Defendants do not dispute that they agreed to the Amended Note and failed to pay the amount owed

when the Amended Note matured. (ECF No. 20-3 at 2-3; ECF No. 22 at 4.) However, they present several defenses against liability. Defendants' first line of argument, and the core of their counterclaims, is that Yach's representation that the Westar Loan was being "written off" creates a genuine issue of material fact about Defendants' liability. Defendants also argue that, aside from Yach's statements, BB&T failed to comply with the conditions in the Amended Note. Neither line of argument is persuasive.

The Amended Note contains two sections relevant to Defendants' argument. Under the section entitled LENDER'S RIGHTS the Amended Note states: "Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and the Borrower will pay that amount." (ECF No. 26-3 at 42.) Under the section entitled MISCELLANEOUS PROVISIONS the Amended Note contains the following relevant provisions:

> Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability.

(*Id.*)

Even accepting Defendants' account of Yach's statements as true, they are still liable for breach of the Amended Note. The express terms of the agreement provide that BB&T "may" declare the entire balance due. This provision does not require BB&T to provide notice or a demand. If this provision were not clear enough, the Amended Note specifically waives "presentment, demand for payment, and notice of dishonor" for the borrower. Defendants point the Court to a number of cases demonstrating the possibility of an oral waiver of a written nonwaiver clause. (ECF No. 30 at 14-15.) While it is true that an oral waiver is possible in limited circumstances, those circumstances do not exist in this case. The parties' intent about amount owed and the date of maturity when they entered the agreement is not in question. And Yach's alleged statements only came long

after Defendants had defaulted, i.e. breached the Amended Note. (*See* ECF No. 26-3 at 41 (default occurs when "Borrower fails to make any payment when due under the Indebtedness.").)

The timing of Defendants' initial breach and of Yach's subsequent alleged statements also renders Defendants' affirmative defenses largely inapplicable to the question of liability. Even assuming Yach's June 2012 statements amounted to fraud or a breach of the implied covenant of good faith and fair dealing, Defendants do not explain, nor does the Court see, any reason that would excuse Defendants' duty to perform when the loan matured in August 2009. While the affirmative defenses and counterclaims may be relevant to an ultimate determination of damages, they do not affect the conclusion that Defendants have breached the Amended Note.

Therefore, the Court finds that BB&T has demonstrated an absence of material factual disputes in regards to Defendants' liability for breach of the Amended Note, and the Court grant's BB&T's Motion on that claim.

### 2.    Damages for Breach of the Note

BB&T also asks the Court to find that Defendants' indebtedness is at least $2,003,456 (plus any additional interest that has accrued since March 21, 2016). (ECF No. 26 at 11.) However, as discussed below the Court finds that Yach's alleged statements create issues of material fact which may affect Defendants' total indebtedness, therefore the Court declines to grant BB&T's request to determine an exact amount of damages.

### 3.    Defendants' Counterclaims

Finally, BB&T asks the Court to grant summary judgment against each of Defendants' counterclaims. Defendants have asserted counterclaims for breach of the Amended Note, breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, and promissory estoppel.

///

///

///

### a. Breach of the Express and Implied Terms of the Contract

For the reasons discussed above, the Court finds that as a matter of law BB&T complied with the express terms of the Amended Note, and therefore Defendants' counterclaim for breach of contract fails.

In Nevada "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its *enforcement*." *A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205) (emphasis added). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Hilton Hotels v. Butch Lewis Prods.*, *Inc.*, 808 P.2d 919, 923 (Nev. 1991). To succeed on a cause of action for breach of the covenant of good faith and fair dealing, a plaintiff must therefore show: (1) the plaintiff and defendant were parties to an agreement; (2) the defendant owed a duty of good faith to the plaintiff; (3) the defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *Id.* Whether a party has acted in good faith is a question of fact. *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998).

Defendants' counterclaim is based on the argument that Yach's alleged misleading statements amount to BB&T acting in bad faith while enforcing the terms of the Amended Note. Thus, according to Defendants, even if the Court finds that BB&T has complied with the express terms of the Amended Note, Defendants may still be entitled to damages based on Yach's behavior.

BB&T argues that, as a matter of law, Defendants cannot demonstrate justifiable reliance because relying on an oral waiver of a $500,0000 debt, especially in the face of contradictory written terms, is patently unreasonable. (ECF No. 26 at 16.) Defendants respond that the question about whether a party was justified in relying on a representation

///

is typically a factual one, and given the context of the statements, a reasonable juror could easily conclude that Defendants' behavior was rational. (ECF No. 30 at 13-14.)

The Court, guided both by the summary judgment standard and by the legal maxim that justifiable reliance is typically a question of fact,[1] finds that Defendants' reliance on Yach's statements, though perhaps suspiciously naïve, presents a factual question for a jury. Viewing the facts in the light most favorable to Defendants, the man responsible for speaking on behalf of BB&T during debt negotiations told them that certain obligations were being "written off." This representation took place amid a discussion of several other debts totaling a great deal of money. Defendants' claim that they reasonably relied on Yach's alleged statements rests largely on an evaluation of Hammer, Meservey, and Yach's respective credibility — which is an evaluation that the Court cannot make on summary judgment.

In regards to damages, BB&T argues that the only damages Defendants have identified are the costs of defending against BB&T's suit, including their attorney fees. Attorney's fees, as BB&T points out, are not an actual injury under Nevada law except in very limited circumstances that do not apply here. *See Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n,* 35 P.3d 964, 970 (Nev. 2001) ("[T]he mere fact that a party was forced to file or defend a lawsuit is insufficient to support an award of attorney fees as damages."); *see also Flamingo Realty, Inc. v. Midwest Dev., Inc.*, 879 P.2d 69, 73 (Nev. 1994) (reversing an attorney fees award for defendants where district court found the litigation was "without reasonable grounds and/or to harass" but did not base the award on any "rule, statute, or contract.").

However, in both their counterclaims and response to BB&T's Motion, Defendants also identify interests and fees they have accrued due to their assumption that the Westar Loan was forgiven — in other words the difference between what they owed on the day

///

_____

[1]*See, e.g.*, *Epperson v. Roloff*, 719 P.2d 799, 803 (Nev. 1986); *Blanchard v. Blanchard*, 839 P.2d 1320, 1322 (Nev. 1992)

Hammer and Meservey met with Yach and the what they owe today. (*See* ECF No. 18 at 9 ¶ 18; ECF No. 30 at 17 ("but-for Rick Yach's representation . . . Defendants would have conducted themselves differently, including avoiding interest accruing and the cost of litigation.")) These damages are cognizable in contract as reliance damages. *See Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1251 (D. Nev. 2016) ("Generally, the remedy for a breach of the implied covenants of good faith and fair dealing is limited to contractual remedies."); *Chevron U.S.A., Inc. v. United States*, 110 Fed. Cl. 747, 805 (Fed. Cl. 2013) (upholding an award of reliance damages for breach of the covenant of good faith and fair dealing). Therefore, the Court finds that Defendants have identified appropriate actual damages in addition to the special damages they seek.

Defendants have identified a material dispute of fact underlying their counterclaim for breach of the implied covenant of good faith and fair dealing. For the reasons discussed above, BB&T's Motion is granted with respect to Defendants' counterclaim for breach of the Amended Note and denied with respect to Defendants' counterclaim for breach of the implied covenant of good faith and fair dealing.

### b.    Fraud and Negligent Misrepresentation

BB&T argues that Defendants' counterclaims for fraud and negligent misrepresentation fail for the same reason as their contract claims: they cannot show justifiable reliance or actual damages. The Court finds these arguments unpersuasive for the same reasons. Defendants have identified a material question of fact and appropriate actual damages. Defendants' fraud counterclaims present an alternative viable theory to recover the interest accrued after Yach's statements. *See Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 263 (Nev. 1997) ("[A] plaintiff can assert a contractual claim and also one for fraud based on the facts surrounding the contract's execution and performance.").

Therefore, BB&T's Motion is denied with respect to Defendants' counterclaims for fraud and negligent misrepresentation.

///

### c.    Promissory Estoppel

"To establish promissory estoppel four elements must exist: (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped." *Pink v. Busch*, 691 P.2d 456, 459 (Nev. 1984). "Detrimental reliance sufficient to create an estoppel does not necessarily require a showing of financial or pecuniary loss." *Alpark Distrib., Inc. v. Poole*, 600 P.2d 229, 231 (Nev. 1979). Further, a court has discretion in shaping an appropriate remedy for a promissory estoppel claim – including an award of reliance damages, which in this case might take the form of interest accrued after Yach's statements were made. *See Dynalectric Co. of Nevada v. Clark & Sullivan Constructors, Inc.*, 255 P.3d 286, 289 (Nev. 2011) ("Nevada follows the doctrine of promissory estoppel articulated in the Restatement (Second) of Contracts … under the Restatement, an award of expectation damages is often an appropriate remedy…[b]ut, in other instances, reliance damages or restitutionary damages may be more suitable.").

Just as with Defendants' breach of the implied covenant claim, even if Yach's alleged statements did not release Defendants from their debt as a legal matter, the statements may have excused them from the additional debt they acquired while relying on them. Contrary to BB&T's assertion that Defendants have failed to identify a legal basis for their request to offset damages by the amount of interest that accrued after Yach's alleged statements, this request fits squarely into their promissory estoppel counterclaim. Defendants have alleged that BB&T, through Yach, told Hammer and Meservey that the Westar Loan was being written off. Defendants allege they did not take any further action, and accrued fees and interest, on the Westar Loan because they relied on Yach's representation. (ECF No. 18 at 8-10.) BB&T's additional argument about justifiable reliance is rejected for the reasons already discussed.

///

For these reasons, the Court finds that Defendants' promissory estoppel counterclaim is an appropriate legal vehicle for their request that their liability be reduced by any amount of interest accrued after Yach's purported statements. Defendants have identified a dispute of material fact underlying their counterclaim, and therefore BB&T's Motion is denied on this count.

## B.    Defendant's Motion for Partial Summary Judgment

Defendants' Motion argues that the Court should reduce any liability by the $396,907.48 the FDIC paid BB&T for the Westar Loan pursuant to the shared loss agreement. Originally, Defendants' argument was based on the possibility that BB&T could obtain a judgment, wait until the end of its loss sharing agreement with the FDIC, collect the agreed upon loss share amount from the FDIC, and then, after parting ways with the FDIC, enforce its judgment for the full amount of the loan against Hammer. (ECF No. 29 at 5.) However, on September 14, 2016, after the parties completed briefing on Hammer's Motion, BB&T and the FDIC agreed to end their relationship earlier than expected. BB&T paid the FDIC $230,288,961 in exchange for the remaining assets from the shared loss agreement. (ECF No. 35-1 at 21-28.)

Defendants argue that it is now an "absolute certainty that if BB&T is aware the relief it has requested in this action . . . then BB&T will receive a windfall in the form of double payment." (ECF No. 35 at 4.) Defendants, however, do not provide any sort of explanation of why, as a matter of mechanics, they believe this windfall will occur, nor any authority to support why, as a matter of law, they would be entitled to some sort of offset after the sale. Defendants simply provide a copy of the Termination Agreement and corresponding press release from BB&T and explain that the posture of this case is now different from the several cases BB&T has cited wherein courts have rejected Defendants' earlier "double dipping" argument. (ECF No. 35 at 3-4; ECF No. 35-1 at 21-28.)

Defendants are correct that the case is now on a different footing than the cases cited by BB&T. But they still have not provided any authority to support the proposition that BB&T, who paid $230,288,961 to the FDIC for the remaining shared-loss assets which

included the loan at issue in this case, must reduce its collection by some unspecified amount. Defendants have failed to establish that they are entitled to a reduction in liability as a matter of law, and therefore their Motion is denied.

### C. Summary

The Court finds that Defendants have breached the Amended Note and are liable for at least the amount due under its terms before Yach's alleged statements suggesting that the loans had been "written off." The total amount owed under the Amended Note is dependent on the resolution of factual issues — namely whether Yach made the statements in question and whether Defendants' reliance on Yach's statements was reasonable. The resolution of these factual questions will determine Defendants' liability for any interest or fees that accrued after Yach's statements, but does not affect their liability under the terms of the Amended Note up to that date. Defendants have failed to establish that his liability should be limited due to the Termination Agreement between the FDIC and BB&T.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the parties' Motions.

It is therefore ordered that Plaintiff's Motion for Summary Judgment (ECF No. 26) is granted in part and denied in part. It is granted with respect to Plaintiff's claim for breach of the Amended Note and Defendants' counterclaim for breach of the Amended Note. It is denied in all other respects.

It is further ordered that Defendants' Motion for Partial Summary Judgment (ECF No. 29) is denied.

DATED THIS 29th day of March 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE